United States District Court

For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

JOHN L. WHITWORTH,

           Plaintiff,

   v.

REGENTS OF THE UNIVERSITY OF CALIFORNIA, et al.,

           Defendants
_____/

No. C-05-0826 MMC

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; REMANDING STATE LAW CLAIMS; VACATING HEARING**

      Before the Court is the motion for summary judgment, filed March 24, 2006 on behalf of defendants Regents of the University of California, Isabel Hawkins, Ralph Anderson, and Carol Lunsford, pursuant to Rule 56 of the Federal Rules of Civil Procedure. Plaintiff John L. Whitworth has filed opposition, to which defendants have replied.  Having considered the papers filed in support of and in opposition to the motion, the Court deems the matter suitable for decision on the papers submitted, VACATES the hearing scheduled for May 12, 2006, and rules as follows.

**LEGAL STANDARD**

      Rule 56 provides that a court may grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party

1   is entitled to a judgment as a matter of law." <u>See</u> Fed. R. Civ. P. 56(c).

2        The Supreme Court's 1986 "trilogy" of <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317 (1986),

3   <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242 (1986), and <u>Matsushita Electric Industrial Co.</u>

4   <u>v. Zenith Radio Corp.</u>, 475 U.S. 574 (1986), requires that a party seeking summary

5   judgment show the absence of a genuine issue of material fact.  Once the moving party

6   has done so, the nonmoving party must "go beyond the pleadings and by her own

7   affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,'

8   designate 'specific facts showing that there is a genuine issue for trial.'" <u>See</u> <u>Celotex</u>, 477

9   U.S. at 324 (quoting Rule 56(c)).  "When the moving party has carried its burden under

10  Rule 56(c), its opponent must do more than simply show that there is some metaphysical

11  doubt as to the material facts." <u>Matsushita</u>, 475 U.S. at 586.  "If the evidence is merely

12  colorable, or is not significantly probative, summary judgment may be granted." <u>Liberty</u>

13  <u>Lobby</u>, 477 U.S. at 249-50 (citations omitted).  When determining whether there is a

14  genuine issue for trial, "'inferences to be drawn from the underlying facts . . . must be

15  viewed in the light most favorable to the party opposing the motion.'" <u>See</u> <u>Matsushita</u>, 475

16  U.S. at 587 (quoting <u>United States v. Diebold, Inc.</u>, 369 U.S. 654, 655 (1962)).

17                                    **DISCUSSION**

18  **I. Federal Claim**

19       In his Second Amended Complaint ("SAC"), plaintiff alleges he was wrongfully

20  terminated by the University of California ("University").  The SAC includes one federal

21  claim, specifically, the Sixth Cause of Action, by which plaintiff alleges a claim under 42

22  U.S.C. § 1983 against the three individual defendants, whom he states violated his

23  "constitutional rights under the Fourteenth Amendment," (<u>see</u> SAC ¶ 57), by depriving him

24  of procedural due process in the manner in which he was terminated, specifically, by failing

25  to provide him, prior to termination, with notice of the grounds for his termination and an

26  opportunity to contest such grounds, (<u>see</u> SAC ¶¶ 32, 56).

27       "The requirements of procedural due process apply only to the deprivation of

28  interests encompassed by the Fourteenth Amendment's protection of liberty and property."

                                          2

1   Board of Regents v. Roth, 408 U.S. 564, 569 (1972).   Defendants argue, inter alia, that the

2   individual defendants are entitled to summary judgment as to Sixth Cause of Action

3   because plaintiff lacks evidence to prove he had a property interest in his employment with

4   the University and because plaintiff lacks evidence to prove the individual defendants made

5   any type of public disclosure that would implicate plaintiff's liberty interests.

6        **A. Property**

7        Plaintiff argues he had a property interest in his employment with the University.  "A

8   person's interest in a benefit is a 'property' interest for due process purposes if there are

9   such rules or mutually explicit understandings that support his claim of entitlement to the

10  benefit and that he may invoke a hearing."  Perry v. Sinderman, 408 U.S. 593, 601 (1972).

11  Such rules or mutually explicit understandings can be created by language in a statute or

12  by an express or implied contract.  See Bishop v. Wood, 426 U.S. 341, 344 (1976).

13       For example, where a state statute provided that a teacher "shall initially be

14  employed on probation" and that such employment "shall be permanent, during efficiency

15  and good behavior after 4 years of continuous service," see Roth, 408 U.S. at 566 n.2, and

16  an administrative rule provided that "[d]uring the time a faculty member is on probation, no

17  reason for non-retention need be given," see id. at 567 n.4, a probationary teacher who

18  was not retained had "no possible claim of entitlement to re-employment" in light of such

19  statute and rule, and, consequently, no property interest under the Fourteenth Amendment,

20  see id. at 577-78.  By contrast, if a university lacking an "explicit tenure system" has

21  "created such a system in practice," a plaintiff may be able to establish a "legitimate claim

22  to entitlement to continued employment" under an implied contract theory in light of the

23  practice.  See Perry, 408 U.S. at 602.

24       Here, it is undisputed that plaintiff was hired by the University on January 7, 2002 as

25  a "regular/career" employee, and that he was terminated on June 30, 2002, less than six

26  months thereafter.  (See Poole Decl. Ex. D.)  It is further undisputed that the terms of

27  plaintiff's employment with the University were governed by a collective bargaining

28  agreement ("CBA"), which includes a provision that "[e]mployees in career appointments

3

1   shall serve a probationary period of six (6) calendar months," and that "[p]rior to the

2   completion of the probationary period, an employee may be released at the discretion of

3   the University, and without recourse to the Grievance or Arbitration Procedure[s] of [the

4   CBA]."  (See Whitworth Decl. Ex. A, Art. 28.A.)  In short, the CBA unambiguously provides

5   that a probationary employee has no right or expectation to continuing employment within

6   the six-month probationary period.  Consequently, in the absence of a statute,

7   administrative rule, or some other agreement, express or implied, between plaintiff and the

8   University, plaintiff is unable to establish a due process deprivation claim predicated on the

9   loss of a property interest in his continued employment.  See Perry, 408 U.S. at 602; Roth,

10  408 U.S. at 578.

11      In opposing summary judgment, Whitworth relies on his declaration, in which he

12  states he had an "understanding" that he had completed his probationary period after

13  having been employed only three months because, at the end of three-month period, he

14  received a positive review and was, in his words, "promoted" when he was given additional

15  tasks to perform.  (See Whitworth Decl. ¶ 9.)  To show the existence of a cognizable

16  property interest in continued employment, however, a plaintiff "must have more than a

17  unilateral expectation of it"; rather, such plaintiff must establish a "legitimate claim of

18  entitlement to it."  See Roth, 408 U.S. at 577.  Here, plaintiff offers no evidence to support a

19  finding that he and the University had an express or implied agreement under which he

20  would not be subject to the CBA's six-month probationary provision; plaintiff relies solely on

21  his subjective belief that he was not bound by the CBA.  Such "unilateral expectation" is, as

22  a matter of law, insufficient to support a finding that plaintiff had a property interest in

23  continued employment with the University.  See id.[1]

24      Plaintiff further relies on provisions in the CBA that provide covered employees with

25

26      [1]Moreover, the "understanding" set forth in plaintiff's declaration is contradicted by
27  plaintiff's earlier deposition testimony, in which, in response to the question, "During the six
    or so month arrangement you had with [the University], you understood you were a
28  probationary employee; correct?," he answered, "Yes."  (See Nguyen Decl. Ex. A at
    178:15-18.)

4

1    a procedural right to notice and an opportunity to be heard prior to imposition of certain

2    discipline, including termination.  (See Whitworth Decl. ¶ 4, Ex. A, Art. 4.)  Such provisions,

3    however, are found in a section of the CBA addressing the circumstances under which the

4    University may "discipline or dismiss a non-probationary career employee," (see id. Ex. A,

5    Art. 4.A.) (emphasis added), and, consequently, are inapplicable to plaintiff.  In any event, a

6    "substantive property right cannot exist exclusively by virtue of a procedural right."  See

7    Dorr v. County of Butte, 795 F. 2d 875, 877 (9th Cir. 1986).  Consequently, even assuming,

8    arguendo, the CBA could be interpreted as affording probationary employees both pre-

9    termination notice and an opportunity to be heard, such procedural rights do not create a

10   federal property interest in continued employment, given the CBA's unambiguous provision

11   that probationary employees may be terminated at the University's discretion.  See id. at

12   878 (holding where rules governing probationary employee's employment provided for right

13   to appeal disciplinary action, such procedural right did "not give rise to a protected property

14   interest" where rules also provided that probationary employees "served at the will of the

15   [employer]" ).[2]

16        Accordingly, the Court finds the individual defendants are entitled to summary

17   judgment on the Sixth Cause of Action, to the extent such claim is based on deprivation of

18   a property right.

19        **B.  Liberty**

20        Plaintiff argues the University terminated him because Darlene Park ("Park") had

21   accused him, falsely, of sexual harassment, and that termination on such ground implicated

22   his liberty interests, because defendants were responsible for Park's accusation

23   //

24   //

25   //

26

27        [2]Similarly, plaintiff's reliance on a CBA provision requiring the University to "treat
     members of the bargaining unit with dignity and respect in all transactions," (see Whitworth
28   Decl. Ex. A, Art. 31), is unavailing in light of the CBA's unambiguous provision that
     probationary employees may be terminated at the discretion of the University.

1    becoming public, thus damaging his reputation.[3]

2          "[W]here a person's good name, reputation, honor, or integrity is at stake because of

3    what the government is doing to him, notice and an opportunity to be heard are essential."

4    Roth, 408 U.S. at 573.  Thus, "a plaintiff's liberty interest is implicated [ ] when the state

5    makes a charge against him that might seriously damage his standing and associations in

6    his community."  Llamas v. Butte Community College Dist., 238 F. 3d 1123, 1129 (9th Cir.

7    2001) (internal quotation and citation omitted).  "Without a disclosure that is public,"

8    however, "there is no violation of due process as the reasons stated to him in private would

9    have no different impact on his reputation than if they had been true."  See id. at 1129.

10         In an attempt to prove a public disclosure, plaintiff offers evidence of six instances in

11   which, he asserts, Park's charge was publicized.  (See Pl.'s Mem. of P. & A. in Support of

12   Opp. at 20:20-21:17.)  The Court finds, however, that plaintiff has failed to offer any

13   evidence to support a finding that any of the statements identified by plaintiff can be

14   attributed to one or more of the individual defendants.[4]

15         First, plaintiff offers evidence that approximately one month before his termination,

16   Park told him that she had spoken to her "roommates" about actions by Whitworth she

17   considered to be harassing in nature.  (See Whitworth Decl. ¶ 11.)  Plaintiff offers no

18   evidence, however, by which a reasonable trier of fact could find Park's statements to her

19   roommates are attributable to any individual defendant.

20         Second, plaintiff offers evidence that Michael Gomez ("Gomez"), a co-worker, told

21   plaintiff six days before plaintiff was terminated that it was "common knowledge in the

22

23         [3]Defendants deny that Park ever advised defendants that plaintiff had sexually
     harassed her, and deny that the decision to terminate plaintiff was based on Park's having
24   made such a charge.  The issue before the Court, however, is whether the individual
     defendants publicly reported that Park had accused plaintiff of sexual harassment, not
25   whether Park actually had made such a charge or whether such a charge, if made, was or
     was not the basis for the termination.  Moreover, factual disputes cannot be resolved in the
26   context of a motion for summary judgment.

27         [4]Because the Court finds the statements identified by plaintiff are insufficient to
28   support a finding that any individual defendant made a public disclosure, the Court does not
     consider defendants' evidentiary objections to certain of the statements.

1  department" that Park had accused plaintiff of sexual harassment.  (See id. ¶ 15.)  Plaintiff

2  offers no evidence, however, to support a finding that any individual defendant told Gomez

3  or any of plaintiff's other co-workers that Park had made such an accusation.

4      Third, plaintiff offers evidence that during a meeting held shortly after plaintiff's

5  termination, which meeting was attended by plaintiff, plaintiff's union steward Nick Slater

6  ("Slater), and Howard Lewis ("Lewis"), a Senior Labor Relations Specialist representing the

7  University, plaintiff and Slater asked Lewis to provide the reasons for the termination, at

8  which time Lewis stated that Park had accused plaintiff of sexual harassment.  (See id.

9  ¶ 18.)[5]  Plaintiff fails to offer any evidence, however, to support a finding that any individual

10  defendant directed Lewis to make a public statement to Slater or to any other third party, or

11  otherwise had any involvement in Lewis's making a statement to Slater, such that a

12  statement by Lewis could be attributed to an individual defendant.[6]

13      Fourth, plaintiff relies on a September 16, 2002 letter from Lewis to Slater, in which

14  Lewis responds to questions posed by Slater about the termination.  (See Poore Decl. Ex.

15  E.)  According to plaintiff, the letter can be interpreted as including a statement by Lewis to

16  Slater that one reason for the termination was that Park had accused plaintiff of sexual

17  harassment; plaintiff fails to point to any language that reasonably can be interpreted in

18  such a manner.  Rather, the letter, to the extent it touches upon a charge of sexual

19  harassment, explicitly states that Park had not accused plaintiff of sexual harassment and

20  that the University had not characterized any of plaintiff's interactions with Park as

21  harassment.  (See id.)

22      Fifth, plaintiff argues that because the above-referenced letter from Lewis to Slater

23  was placed in the University's "Grievance File," (see id. ¶ 6), such placement constitutes a

24  _____

25  [5]Lewis denies having made any such statement.  As noted, however, for purposes of
   the instant motion, the evidence is viewed in the light most favorable to the non-moving
26  party.

27  [6]Plaintiff also fails to offer any authority for the proposition that when a terminated
   employee's chosen representative requests that a representative of the employer disclose
28  in a private meeting the reasons for the termination, the response is considered a public
   disclosure for purposes of a federal due process deprivation analysis.

1    separate public disclosure.  Plaintiff offers no evidence, however, that the "grievance file" is

2    accessible to the public,[7] and, in any event, as discussed above, the letter cannot fairly be

3    interpreted as including a statement that plaintiff was accused of sexually harassing Park.

4              Sixth, and lastly, plaintiff argues that "the doctrine of republication applies because

5    plaintiff has been compelled to explain his termination to numerous potential employers."

6    (See Pl.'s Mem. of P. & A. in Support of Opp. at 21:13-15).  This argument fails, for want of

7    both evidentiary and legal support.  The only evidence offered pertaining to prospective

8    employers is plaintiff's declaration that some potential employers "found out" he had been

9    terminated by the University, (see Whitworth Decl. ¶ 34); plaintiff offers no evidence that he

10   has been compelled to disclose the fact of the termination to any potential employer, let

11   alone compelled to disclose that he was terminated because of a charge of sexual

12   harassment.  Moreover, even if such evidence had been offered, such "self-publication"

13   cannot, as a matter of law, constitute the requisite public disclosure.  See Llamas, 238 F.

14   3d at 1130-31 (holding evidence that plaintiff, in response to questions on job application

15   forms, advised potential employers he had been terminated on account of cheating

16   insufficient to satisfy public disclosure requirement).

17   //

18   //

19   //

20   //

21   //

22

23

---

24        [7]The Ninth Circuit, while recognizing a "circuit split" as to the issue, has not had
     occasion to consider whether an employer's "maintaining stigmatizing information in its
25   personnel files" can constitute the requisite public disclosure.  See Llamas, 238 F. 3d at
     1130.  Defendants offer evidence that the September 16, 2002 letter is not contained in
26   plaintiff's "personnel file," (see Supp. Jones Decl. ¶ 8), which might suggest some
     distinction exists between plaintiff's "personnel file" and the "Grievance File" referenced by
27   plaintiff.  In any event, given that the "Grievance File" does not contain a statement that
     plaintiff was accused of sexual harassment and/or that he was terminated on account of
28   such an accusation, this Court will not further address the issue.

1    Accordingly, the Court finds the individual defendants are entitled to summary

2  judgment on the Sixth Cause of Action, to the extent such claim is based on deprivation of

3  liberty.[8]

4  **II.  State Law Claims**

5    The Court's jurisdiction over the instant action is based on the existence of a federal

6  question, (see Notice of Removal ¶ 5), and, consequently, the Court's jurisdiction over

7  plaintiff's state law claims is supplemental in nature, see 28 U.S.C. § 1367(a).

8    A district court may decline to exercise supplemental jurisdiction where "the district

9  court has dismissed all claims over which it has original jurisdiction."  See 28 U.S.C.

10  § 1367(c)(3).  Where, as here, a district court has granted summary judgment on the sole

11  federal claim, the district court, pursuant to § 1367(c)(3), may properly decline to exercise

12  supplemental jurisdiction over any remaining state law claims.  See Bryant v. Adventist

13  Health System/West, 289 F. 3d 1162, 1169 (9th Cir. 2002).

14    Accordingly, the Court will exercise its discretion to decline to exercise supplemental

15  jurisdiction over plaintiff's state law claims.

16                                                  **CONCLUSION**

17    For the reasons stated above:

18    1.  Defendants' motion for summary judgment is hereby GRANTED as to the Sixth

19  Cause of Action; in all other respects, the motion is DENIED without prejudice.

20    2.  Whitworth's state law claims are hereby REMANDED to the Superior Court of

21  California, in and for the County of Alameda.

22    **IT IS SO ORDERED.**

23

24  Dated: May 10, 2006                        MAXINE M. CHESNEY
                                                 United States District Judge
25

26    [8]In light of the Court's finding that plaintiff has not offered sufficient evidence to show
27  the individual defendants deprived plaintiff of a federally-protected property or liberty
    interest, the Court does not reach defendants' alternative arguments that the individual
28  defendants are entitled to qualified immunity and that the Sixth Cause of Action is barred by
    the statute of limitations.

                                                      9